Filed 8/26/25  A-World Trade v. Apmex CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| A-WORLD TRADE, INC., | B335733 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV19892) |
| v. | |
| APMEX, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Reversed.

Tahmazian Law Firm, Jilbert Tahmazian, Justin Tahmazian, Anthony J. Tahmazian; Manfredi, Levine, Eccles, Miller & Lanson, Mark F. Miller and David V. Hadek for Plaintiff and Appellant.

Steptoe & Johnson and Mary H. Tolbert; Lillis Pitha and Martin L. Pitha for Defendant and Respondent APMEX, Inc.

Lapidus & Lapidus and Jim D. Bauch for Defendant and Respondent Bay Precious Metals, Inc.

Murchison & Cumming and Gina Och for Defendant and Respondent Bullion Exchange, LLC.

Michael Best & Friedrich and Michael Barnhill for Defendants and Respondents Bullion Shark, LLC, Pinehurst Coin Exchange, Inc., Silver Towne L.P., and J.M. Bullion, Inc.

Mousavi Law and Amy Azita Mousavi for Defendant and Respondent DBS Coins, LLP.

Cooley, Deepti Bansal and Anupam Dhillon for Defendant and Respondent Liberty Coin, LLC.

Law Offices of Armen R. Vartian, Armen Vartian and Laura Tiemstra for Defendant and Respondent Asset Marketing Services, LLC.

Snell & Wilmer, Keith M. Gregory and Colin P. Ahler for Defendant and Respondent Scottsdale Mint, LLP.

Bradley R. Tyer & Associates, Bradley R. Tyer and Lara R. Shapiro for Defendant and Respondent SD Bullion, Inc.

Jeffer Mangels Butler & Mitchell and Mark Riera for Defendant and Respondent Silver Gold Bull USA, Inc.

Mound Cotton Wollen & Greengrass, Lawrence Hecimovich and Jonathan Gross for Defendant and Respondent Texas Gold and Silver Exchange, Ltd.

# I.   INTRODUCTION

Plaintiff A-World Trade, Inc. sued defendants[1] pursuant to Business and Professions Code section 17045[2], which proscribes the "secret payment or allowance of rebates, refunds, commissions or unearned discounts" to certain purchasers and not others, "to the injury of a competitor and where such payment or allowance tends to destroy competition . . . ."  Plaintiff alleged defendants violated section 17045 by receiving "secret payments" from eBay.  Defendants demurred, arguing among other things that section 17045 did not apply to the challenged payments.  The trial court sustained the demurrer to the second amended complaint without leave to amend.  Because we conclude that plaintiff sufficiently alleged a violation of section 17045, we reverse and remand for further proceedings.

---

[1]   Defendants are APMEX, Inc., Bay Precious Metals, Inc., Bullion Exchange, LLC, Bullion Shark, LLC, DBS Coins, LLP, Liberty Coin, LLC, J.M. Bullion, Inc., Asset Marketing Services, LLC, Pinehurst Coin Exchange, Inc., Scottsdale Mint, LLP, SD Bullion, Inc., Silver Gold Bull USA, Inc., Silver Towne, L.P., and Texas Gold and Silver Exchange, Ltd.

[2]   Further statutory references are to the Business and Professions Code, unless otherwise indicated.

## II.    BACKGROUND

A.    *Factual Background*[3]

Plaintiff and defendants were competing sellers of precious metal bullion products, including coins and bars (sellers), which: "(a) . . . are made of precious metal; (b) . . . store a value related directly to the price of the underlying metal; (c) . . . are acquired primarily for the purpose of investment; and (d) . . . are not government regulated commodities."  Sellers sold precious metal bullion on third-party websites (such as Amazon, Overstock, and eBay), individual seller sites, and in brick-and-mortar stores.

eBay was an online marketplace that hosted an "eBay Bullion Market" for buyers and sellers of precious metal bullion. Sellers paid fees to eBay in order to access the eBay Bullion Market and to use eBay's "selling services and tools." Specifically, eBay charged sellers "transaction fees" and "payment processing fees" per transaction.

Beginning in January 2009, defendants agreed in a "Daily Deals Agreement" to participate in eBay's "Daily Deals Program." Pursuant to that agreement, select sellers, including defendants, agreed to offer items for sale at discounted prices in return for eBay's agreement to market those items to buyers.  eBay did not select plaintiff to participate in the Daily Deals Program.

---

[3]    "In [an] appeal following the sustaining of a demurrer, we assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken." (*Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281.)

4

Under the terms of the Daily Deals Agreement, defendants agreed to provide eBay with the list price, that is, the price at which a defendant or the market would generally sell the product without a discount. eBay would then contact defendants and invite them to list one or more items at discounted prices for a specified period of time, referred to as a "Deal." At the start of the Deal, defendants would "reduce the price of the [s]pecified [i]tem listed on the eBay [s]ite to the Deal Price specified in" the Daily Deals Agreement; and, at the end of the Deal, defendants would immediately increase the price of the item to the list price or higher.

For certain deals, referred to as "Subsidized Deals," eBay agreed to pay defendants "a Subsidized Payment . . . to apply towards the discounted price of the [s]pecified [i]tem." Each Subsidized Deal would "describe in the Deal Terms the amount of the subsidy to be paid by eBay to [s]eller upon the sale of the [s]pecified [i]tem ('Subsidy Payment') and the amount of the price discount to be provided by [s]eller ('Seller Discount')." (Boldface omitted.) Thus, the reduced price of items sold to customers as part of a Subsidized Deal included both defendants' discount (for which eBay did not provide any payment) and the eBay Subsidy Payment. Within approximately two months of the Subsidized Deal, eBay would send defendants a "Subsidy Reconciliation Statement," which would "summarize the Deal Terms for all Deals completed by [a] [s]eller during the applicable month, including the total number of units sold (per [s]pecified [i]tem), and the total Subsidy Payment due from eBay to [s]eller." If a defendant did not note any error in the reconciliation statement, eBay would pay that defendant the entirety of the Subsidy Payments.

5

The Daily Deals Agreement provided that defendants "shall not disclose to any third party, without the written consent of eBay, the terms of this Agreement or any Deal Terms, including without limitation, the amount of any Subsidy Payment received by [s]eller from eBay or the existence of any Subsidy Payment." Plaintiff contacted eBay and inquired whether "any such payments, subsidies, discounts and/or rebates [were] paid and/or allowed to sellers in the eBay Bullion Market." eBay denied the existence of any such payments or subsidies. Defendants kept the Subsidy Payments secret from other competitors and plaintiff did not discover the terms of the Daily Deals Agreement until it pursued federal litigation.

Defendants' participation in the Daily Deals Program enabled them to price their products consistently lower than could plaintiff, which had to "take into account eBay transaction . . . and payment processing fees." As a result, plaintiff could not maintain its previous volume of sales. By 2022, plaintiff's gross revenue from the sales of precious metal bullion had declined to less than 15 percent of its gross revenue in 2008.

B.    *Procedural History*

1.    Federal Proceedings

In 2020, plaintiff filed suit against defendants in federal district court, alleging a violation of section 2(a) of the Clayton Act (15 U.S.C. § 15(a)), as amended by the Robinson-Patman Act (15 U.S.C. § 13(a)), a violation of the Sherman Antitrust Act (15 U.S.C. § 1), tortious interference with business expectancy, and unfair competition (§ 17200). After the district court granted two

6

motions to dismiss, plaintiff filed its third amended complaint, alleging, among other claims, that defendants had received secret rebates in violation of section 17045. The district court granted defendants' motion to dismiss the third amended complaint with prejudice as to the federal claims. The court then declined to exercise supplemental jurisdiction on the remaining state claims and dismissed them without prejudice to refiling the claims in state court.

### 2. State Proceedings

On June 20, 2022, plaintiff filed a complaint against defendants in the trial court. And, following the sustaining of a demurrer, plaintiff filed on May 5, 2023, the operative second amended complaint, alleging one cause of action for violation of section 17045. Plaintiff attached the Daily Deals Agreement as an exhibit to the complaint and characterized the Subsidy Payments as "Secret Payments" that defendants received from eBay to "offset" the transaction fee and the payment processing fee. Plaintiff also alleged that the Subsidy Payments had a tendency to destroy competition in the eBay Bullion Market because they allowed defendants to price their precious metal bullion at prices lower than plaintiff and other competitors who were not Daily Deals Agreement participants. Such a pricing advantage "tend[ed] to concentrate sales and customers of [precious metal bullion products] almost exclusively in the hands of the [d]efendants alone."

Defendants filed a joint demurrer, arguing that the second amended complaint should be dismissed without leave to amend because plaintiff failed to allege the existence of a secret payment

7

pursuant to section 17045. Plaintiff filed an opposition, to which defendants replied.

On October 16, 2023, the trial court heard argument on the demurrer and took the matter under submission. The next day, the court entered an order sustaining the demurrer without leave to amend, on the grounds that the Subsidy Payments to defendants under the Daily Deals Agreement were not secret. The court noted that the agreement was a "regular feature of how [eBay] operates," and that "this marketing program is not and has not been a secret . . . ."

On November 9 and 30, 2023, the trial court entered a judgment of dismissal. Plaintiff timely appealed.

## III. DISCUSSION

A. *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has

8

been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.    *Section 17045*

Section 17045, part of the Unfair Practices Act (the Act; § 17000 et seq.), provides: "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful."[4] As relevant here, to state a section 17045 claim, a plaintiff must allege: the defendant secretly received payments of rebates; the plaintiff was harmed by the defendant's conduct; and the payment had a tendency to destroy competition. (CACI No. 3320; see *Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.* (1993) 16 Cal.App.4th 202, 212 ["[T]here are three elements to a violation of section 17045. First, there must be a 'secret' allowance of an 'unearned' discount. Second, there must be 'injury' to a competitor. Third, the allowance must tend to destroy competition"].) "Section 17045, like the other provisions of the Act, must be 'liberally construed' to serve its purposes. (§ 17002.)" (*Ibid*.) The purpose of the Act "is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair,

---

[4]    The parties do not dispute that plaintiff sufficiently alleged injury.

9

dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." (§ 17001.)

Section 17045 applies not only to sellers who provide secret payments to purchasers, but also to purchasers who receive the payments. (*Fisherman's Wharf Bay Cruise Corp v. Superior Court* (2003) 114 Cal.App.4th 309, 332, citing *ABC Internat. Traders, Inc. v. Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1254–1268.)

C.    *Analysis*

1.    Secrecy

"[Rebates] are 'secret' if they are concealed from or not disclosed to other buyers." (CACI No. 3321; see *Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc., supra*, 16 Cal.App.4th at p. 212 ["Viewing the evidence most favorably to [the plaintiff], the nondisclosure of [the defendant]'s receipt of maximum discounts to which it was not entitled certainly could be construed as a 'secret' allowance"].) As noted, the trial court concluded that the Daily Deals Program was not a secret because eBay regularly advertised daily deals on its website. The secrecy element cannot be met "if the essential terms of a rebate or unearned discount are known to the plaintiff[ ] and the public . . . ." (*Eddins v. Redstone* (2005) 134 Cal.App.4th 290, 335.) Here, plaintiff alleged that it was unaware of the payments to defendants, which began in 2009, that the Daily Deals Agreement included a confidentiality clause, and that, when asked directly by plaintiff about such payments, eBay denied

10

their existence. Plaintiff also alleged it only discovered that defendants had executed the Daily Deals Agreement during the course of the federal litigation. Thus, even if plaintiff was presumptively aware of the existence of the Daily Deals Program through the eBay website, it sufficiently alleged that the Subsidy Payments were nevertheless secret because the essential terms of the Daily Deals Agreement describing those payments were subject to a confidentiality provision and, when confronted about them, eBay denied their existence. Accordingly, plaintiff sufficiently alleged the secrecy element.

2.      Payments or Allowances of Refunds, Rebates, Commissions, or Unearned Discounts

Plaintiff alleged defendants received secret payments from eBay in the form of Subsidy Payments for defendants' participation in the Daily Deals Program. Defendants contend that because the Subsidy Payments under the terms of the Daily Deals Program were repayments by eBay for discounts on select items that defendants sold to their consumers, rather than discounts for the purchase of eBay's services, the payments were lawful under the statute.[5]

Even assuming the Subsidy Payments were reimbursements for discounts that defendants passed on to their consumers (in the form of lower purchase prices for defendants' products), as plaintiff alleged, the subsidies ultimately enabled defendants to "offset the payment processing fee[s]" they paid to

---

[5]     Plaintiff conceded in the trial court that the Subsidy Payments were subsidies for the discounts that defendants provided to their customers.

eBay and to pass on those savings to the consumer. Thus, as alleged by plaintiff, the Subsidy Payments defendants received on each Daily Deal transaction enabled them to both purchase eBay's services for a reduced fee and sell their products to their customers at a reduced price. This is the type of secret payment that section 17045 was primarily intended to prevent. (See *ABC Internat. Traders, Inc. v. Matsushita Electric Corp., supra*, 14 Cal.4th at pp. 1261–1262 ["the statute was intended primarily to protect against competitive injury in the secondary line of commerce, i.e. at the level of the discount's recipient"].)[6]

Because section 17045 must be liberally construed to effectuate its purpose (§ 17002) and we must also liberally construe plaintiff's factual allegations, we conclude plaintiff has sufficiently alleged that the Subsidy Payments were "rebates" within the meaning of section 17045. (See Merriam-Webster's Online Dict. (2025) <https://www.merriam-webster.com/dictionary/rebate> [as of Aug. ??, 2025], archived at <https://perma.cc/????-????> [a rebate is "a return of a part of a payment"].)

### 3. Tendency to Destroy Competition

Finally, we consider whether plaintiff sufficiently alleged that the Subsidy Payments had a tendency to destroy competition. Plaintiff asserted that the pricing advantage

---

[6] Although this argument was raised for the first time in plaintiff's reply brief, parties in their reply brief may "rebut arguments made by the respondent in respondent's brief." (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 276.)

defendants received from the Daily Deals Agreement provided them with a major advantage over other competitors. Specifically, plaintiff alleged that the subsidies or rebates defendants received through participation in the Daily Deals Program resulted in their paying lower transaction and payment processing fees to eBay than plaintiff was required to pay and passing on those savings to their customers.

Defendants contend that plaintiff failed to allege a tendency to destroy competition because the eBay Bullion Market is but a single store and plaintiff was not prevented from competing for sales of precious metal bullion products in any other marketplace. Plaintiff has alleged that the Subsidy Payments have a tendency to destroy competition. And that is enough at this early stage of the litigation. (*Fierro v. Landry's Restaurant Inc.*, *supra*, 32 Cal.App.5th at p. 281.) Only as the litigation progresses will plaintiff be required to define the contours of the relevant market, consistent with its claim that the Subsidy Payments were improperly paid by an online retail platform to defendants as the purchasers of that online retail service, and to come forward with evidence that the Subsidy Payments tended to destroy competition in that relevant market.

13

## IV.   DISPOSITION

The judgment is reversed and the matter remanded for further proceedings.  Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.

14